UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ERNEST C. CAMPBELL, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:09-CV-1180-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Ernest C. Campbell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Campbell timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Campbell was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eleventh grade education. (Doc. 8 at 4, Tr. at 32.)  His past work experience includes employment as an equipment operator.  (Doc. 8 at 4, Tr. at 35, 41, 48.)  Mr. Campbell claims that he became disabled on August 29, 2006, due to problems resulting from a heart attack, which include numbness in legs, dizziness, and illness due to a defibrillator.  (Tr. at 16, 35-36.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the

analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Campbell "meets the insured status requirements of the Social Security Act through December 31, 2009." (Tr. at 18.) He further determined that Mr. Campbell had not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Plaintiff's coronary artery disease and hypertension are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 19. The ALJ determined that Mr. Campbell has the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). With normal breaks, the claimant can stand and walk about six hours during an eight hour workday and sit about six hours during an eight-

> hour workday.  On an occasional basis, the claimant can perform balancing, stooping, kneeling, crouching, and crawling.  He can also occasionally climb ramps and stairs.  The claimant is restricted from climbing ladders, ropes and scaffolds.  He should avoid concentrated exposure to extreme cold, heat, humidity and hazards such as dangerous machinery and heights.  He should also avoid concentrated exposure to fumes, noxious odors, dusts, gases and poor ventilation.

*Id*. at 20.

The ALJ then determined that, while Plaintiff is not able to perform past relevant work, "[c]onsidering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Tr. at 21.)  Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from August 29, 2006 through the date of this decision."  *Id*. at 22.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support

the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that

the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Campbell alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason. (Doc. 8 at 10-15.) Plaintiff claims the "ALJ erred in relying solely on the opinion of a non-examining reviewing physician for the formulation of his residual functional capacity findings." *Id*. at 10.

The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other

things, upon: the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to give substantially less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e),

416.927(d). The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a claimant's RFC. *See e.g.*, 20 C.F.R. § 404.1546(c).

In the instant case, although Plaintiff claims the ALJ relied solely on the opinion of Dr. Richard Whitney in determining Plaintiff's RFC, Plaintiff's contention is incorrect. The ALJ relied not only on the opinion of Dr. Whitney, but on the entirety of the medical evidence of record.

As noted by the ALJ, medical records from Jackson County Hospital show that Plaintiff was diagnosed with acute myocardial infarction on August 29, 2006, and was subsequently transferred to Huntsville Hospital for further treatment. (Tr. at 18, 121-70.) Huntsville Hospital records indicate that Plaintiff "had an ectactic left anterior descending artery with questionable small thrombus and the diagonal had a 60% ostial lesion. The circumflex and right coronary arteries had irregularities." *Id.* at 18, 151-70. Further,

Plaintiff had a "subsequent ventricular fibrillation arrest and an automatic implantable cardioverter/defibrillator (AICD) was implanted." The ultimate diagnosis was acute myocardial infarction, mild left ventricular dysfunction and ventricular fibrillation. *Id*. at 19, 151-70. After Plaintiff was discharged from Huntsville Hospital, he returned to the hospital three more times during the following two months. On September 21, 2006, he complained of chest pain and was readmitted for atrial fibrillation. Then, on September 27, 2006, he complained of chest pain and was treated for pericardial effusion. Finally, on October 17, 2006, he returned due to chest pain, at which time a left heart catheterization revealed mild single vessel coronary disease, preserved left ventricular ejection fraction, elevated left sided filling pressures. A successful angio-seal closure was noted. *Id*. at 19, 179-212, 274-92.

However, on October 13, 2006, an echocardiogram performed at the Heart Center, and interpreted by Dr. J. Michael Campbell, showed "the pumping function of the heart was above average and cardiac chamber dimensions were all normal. Aortic, mitral and tricuspid valves were also

normal in structure and function. There was no evidence of aortic insufficiency." *Id*. at 19, 295-96.

Further, the ALJ looked to the records of Dr. Richard Clay, Dr. Tommy Wright, and Dr. Junaid Memon. (Tr. at 19.) On October 10, 2006, Dr. Clay, a cardiothoracic surgeon, noted Plaintiff had "no complaints of chest pain or shortness of breath", his heart had "regular rate and rhythm", and "[i]n general he is progressing nicely." *Id*. at 299, 339. Dr. Clay saw Plaintiff again on November 14, 2006, at which time he again noted that Plaintiff had "no complaints of chest pain or shortness of breath", heart had "regular rate and rhythm", and "[i]n general he is progressing nicely." Plaintiff's blood pressure was 130/84 and heart rate was 69. *Id*. at 19, 298, 336.

Plaintiff was next examined at the Heart Center by Dr. Tommy Wright on November 22, 2006. (Tr. at 19, 302-03.) Dr. Wright found Plaintiff to be "stable without angina" and "no PND, orthopnea, edema, or tachy palpitations." *Id*. Plaintiff had normal breathing and airflow, with lungs clear to auscultation and percussion. Upon examination, the heart was normal. *Id*.

Plaintiff was also seen by Dr. Junaid Memon on several occasions from September 27, 2006 through February 21, 2008. (Tr. at 19, 326-335.) Only once, on August 21, 2007, did Plaintiff complain of chest pain. *Id.* at 19, 327. At that time, Dr. Memon noted Plaintiff had not seen his cardiologist in eight months, he recommended Plaintiff see his cardiologist, advised that he go to the ER if he suffered any further chest pain, and advised him to follow up. *Id.* There is nothing in the record to indicate that Plaintiff saw his cardiologist after this visit, nor is there anything to indicate that he made any trips to the ER.

Plaintiff also saw Dr. Memon on September 27, 2006 (complaining of dyspnea), January 15, 2007 (complaining of sore throat, allergy symptoms, and shortness of breath), November 13, 2007 (complaining of sore throat, cough, and congestion), February 21, 2008 (complaining of acid reflux and gas), and on April 1, 2008 (complaining of sore throat, cough, and congestion). *Id.* at 19, 326, 328, 334. Plaintiff never complained of chest pains on any of these occasions. *Id.* In fact, Dr. Memon's notes indicate Plaintiff denied any chest pains on January 15, 2007, and had neither chest

pain nor shortness of breath on the April 1, 2008 visit. *Id.* at 19, 326, 334.

Finally, the ALJ notes that he gave "significant weight" to the opinion of Dr. Richard Whitney, the State agency medical consultant, because his opinion was consistent with other medical evidence of record. (Tr. at 21.) Dr. Whitney found Plaintiff to be "capable of performing work at the light level of exertion with certain restrictions."[1] The ALJ stated he gave Dr. Whitney's opinion "significant weight as it [is] consistent with other medical evidence of record." *Id.* From the discussion above, it is apparent that the ALJ was correct.

Although Plaintiff claims the ALJ should have "ordered a physical consultative evaluation in light of the absence of any examining opinion evidence, and in light of the Plaintiff's admitted inability to seek medical care due to his lack of insurance and financial condition" (Doc. 8 at 10), this is simply not the case. There was no need for the ALJ to order a physical consultative evaluation due to the entirety of the medical record as noted above. Further, while Plaintiff may have financial problems and lack

---

[1] *See supra* pp. 4-5 for Plaintiff's RFC, which the ALJ based partially on Dr. Whitney's opinion.

insurance, he did not appear to have any trouble seeking necessary treatment following his heart attack.

Therefore, as his opinion was based on the record as a whole, the ALJ was correct in determining Plaintiff's RFC.

IV.   Conclusion.

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the Commissioner will be affirmed by separate order.

Done this <u>7th</u> day of <u>July 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671